THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JULIE ALTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| SMITHGROUP JOHNSON, JOHNSON & ROY, INC. | ) | JURY DEMANDED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES the Plaintiff, JULIE ALTON, by and through her attorneys, HOLMAN & STEFANOWICZ, LLC, for her Complaint against the Defendant, SMITHGROUP JOHNSON, JOHNSON & ROY, INC., states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction of the claims herein pursuant to 29 U.S.C. § 2601, *et seq.*, 28 U.S.C.A. §§ 1331 and 1343(a)(3). This civil action arises under the laws of the United States of America. Plaintiff is alleging a violation of her rights under The Family Medical Leave Act ("FMLA"), as amended, 42 U.S.C. § 2601, *et seq*.

2. Venue herein is proper under 28 U.S.C.A. § 1391(b). The unlawful employment practices complained of in this Complaint occurred, and the employment records relevant to this matter are maintained and administered within the Northern District of Illinois.

## PARTIES

3. Plaintiff, JULIE ALTON ("ALTON"), currently, and at all times relevant hereto, was a resident of the Village of North Barrington, in the County of Lake, in the State of Illinois.

4. Defendant, SMITHGROUP JOHNSON, JOHNSON & ROY, INC., ("SMITHGROUPJJR") is and at all times relevant hereto, was a foreign corporation organized under the laws of the State of Michigan. At all times relevant hereto, the Chicago office of SMITHGROUPJJR was 35 East Wacker Drive, Suite 900, Chicago, Illinois 60601.

## FACTUAL BACKGROUND

5. SMITHGROUPJJR is a nationally recognized integrated design firm with more than 1,100 employees in 10 offices in the U.S. and a presence in Shanghai, China. The firm serves clients in the health, workplace, higher education, science & technology, cultural, urban design, and waterfront sectors.

6. In or about February 2017, ALTON began working for SMITHGROUPJJR at its Chicago office located at 35 East Wacker Drive, Suite 900, Chicago, Illinois, as an Interior Designer III.

7. ALTON was the only Interior Designer in the Health Care group in SMITHGROUPJJR's Chicago office that focused on client presentations and interaction, and designs; and had prior experience as an Interior Designer in the Health Care industry.

8. In or about September 2017, ALTON was diagnosed with Stage IV metastatic breast cancer that had metastasized to the bones in her skull, back and femur, and into her liver and lungs.

9. Despite receiving treatment for her breast cancer, ALTON billed between 40-45 hours each week while working for SMITHGROUPJJR.

10. Throughout her employment with SMITHGROUPJJR, ALTON met and exceeded the legitimate performance standards of her employer; and was liked and praised by the clients that she was assigned to.

11. On or about May 18, 2018, ALTON sent an email to Alina Rudman, the Human Resource Director at the SMITHGROUPJJR Chicago office, which stated:

> I am requesting to be put on FMLA. I would like to go on intermittently. I have a doctor's note I can provide. I have questions regarding short term and long-term disability. Can we meet next week to discuss?

12. On or about May 18, 2018, Alina Rudman responded to ALTON via email and stated:

> We have a formal process that we would need to follow. There are a couple forms that you and your doctor would need to complete. Please see attached. When are you planning for your leave to begin and what will your schedule look like? Yes, we can meet, my calendar is up to date, please put a time on my calendar and I'll be glad to answer your questions.

13. Alina Rudman attached two forms to her May 18, 2018 email to ALTON: (1) SMITHGROUPJJR Request for Leave, and (2) Certification of Health Care Provider for Employee's Serious Health Condition.

14. On or about May 21, 2018, ALTON sent to Alina Rudman via email the completed SMITHGROUPJJR Request for Leave form.

15. On or about May 22, 2018, ALTON met with Alina Rudman. During this conversation Alina Rudman indicated that "I need more information if I am going to be able to help you get FMLA leave." As a result, ALTON provided Alina Rudman with the following information regarding her need for FMLA leave:

- That in or about September 2017, she was diagnosed with Stage IV metastatic breast cancer that had metastasized to the bones in her skull, back and femur, and into her liver and lungs;

- That she has been receiving treatment, which she scheduled at times that would not interfere with her work responsibilities;

- That she is scheduled to begin a new more extensive chemotherapy that will likely have side effects that will render her unable to work for a certain period of time immediately following the treatments;

- That her doctors are uncertain how she will respond to the new chemotherapy or what or how severe her side effects will be;

- That she would receive the chemotherapy every three (3) weeks and would like to take intermittent FMLA leave at the time of the treatments;

- ALTON expressed that she enjoyed working for SMITHGROUPJJR and that she wanted to maintain her job throughout her treatments and that it was important that she maintain her health insurance.

16. At the May 22, 2018 meeting, ALTON also asked Alina Rudman again for information regarding the short-term and long-term disability that was provided as a benefit by SMITHGROUPJJR.

17. On or about May 29, 2018, ALTON's medical provider sent directly to Alina Rudman via facsimile the completed Certification of Health Care Provider for Employee's Serious Health Condition. On that day, ALTON emailed Alina Rudman a copy of the same.

18. The Certification of Health Care Provider for Employee's Serious Health Condition, stated, without limitation, that:

- Pt. has a diagnosis of cancer and is currently undergoing treatment. She is experiencing cancer related symptoms and treatment related side effects;

- Employee will need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition;

- Treatment is every 3 weeks;

4

- Estimate the part-time or reduced work schedule the employee needs, 1-2 days per week from 5/28/18 through 11/25/18;

- Condition will cause episodic flare-ups periodically preventing the employee from performing her job functions;

- It is medically necessary for the employee to be absent from work during the flare-ups, cannot determine the side effects the patient will experience.

19. On or about May 31, 2018, ALTON was provided in a normally scheduled Interior Designers' meeting at SMITHGROUPJJR her projections of billable hours for the months of June and July. ALTON was fully-booked for the months of June and July with her typical projected hours of 40-45 billable hours per week. In July, ALTON was scheduled to begin working on a project that involved the construction of a new hospital building in the Chicagoland area. As the only Interior Designer in the Health Care group in SMITHGROUPJJR's Chicago office, this new project would likely keep ALTON fully-booked for a number of years.

20. On or about June 1, 2018, ALTON was called into a meeting and was advised that her employment with SMITHGROUPJJR was terminated effective immediately. ALTON was advised that her termination was not performance related but was based upon the lack of work at the office. ALTON asked about her FMLA leave request or about the possibility of going on short-term disability; she was advised those options were not available to her.

21. On or about June 1, 2018, after being advised of the termination of her employment, ALTON was immediately taken to meet with Alina Rudman, Human Resource Director, where she was advised that she could not leave without signing a Non-Disclosure and Return of Company Property Agreement. Upon signing the Agreement, ALTON was escorted to gather her personal belongings and then promptly escorted to the door.

22. Out of the 103 employees that worked at SMITHGROUPJJR's Chicago office, ALTON was the only Interior Designer terminated, and she was the only employee from the Health Care group terminated.

23. Pursuant to SMITHGROUPJJR's Health & Welfare Benefit Plan, ALTON's participation in the Plan ended upon the termination of her employment. As a result, ALTON lost her health insurance coverage for herself, her disabled husband, her minor son, and daughter who is attending college. Additionally, ALTON lost her salary and other employment benefits she was entitled to as an employee of SMITHGROUPJJR.

## COUNT I
## INTERFERENCE WITH THE RIGHT TO TAKE FMLA LEAVE

24. The Plaintiff realleges and incorporates paragraphs 1 through 23 as if fully set forth herein.

25. The FMLA guarantees eligible employees 12 weeks of leave in a 1-year period following certain events, including the employee's own serious illness. 29 U.S.C. § 2612(a)(1).

26. 29 U.S.C. § 2615(a)(1) provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 C.F.R. § 825.220(a)(1).

27. SMITHGROUPJJR is a covered employer under the FMLA because it is engaged in commerce or in an industry affecting commerce and employs 50 or more employees for each working day during each of 20 or more calendar workweeks in 2018 or the preceding calendar year. 29 U.S.C. § 2611(4)(A)(i); 29 C.F.R. § 825.104(a).

6

28. ALTON was an employee of SMITHGROUPJJR that was eligible for FMLA leave because she was employed by SMITHGROUPJJR for at least 12 months and worked at least 1,250 hours during the 12-month period prior to her request for FMLA leave. 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a).

29. ALTON was eligible for FMLA Leave because she worked at least 1250 hours in a year at SMITHGROUPJJR's worksite -- 35 East Wacker Drive, Suite 900, Chicago, Illinois -- with at least 50 people in a 75-mile radius. 29 U.S.C. 2611(2)(B)(ii); 29 C.F.R. § 825.110(a).

30. ALTON was entitled to FMLA Leave because of her serious health condition -- Stage IV metastatic breast cancer -- and that her health condition required treatments, consisting of chemotherapy, making it medically necessary for her to intermittently take leave or require her to work on a reduced schedule. 29 U.S.C. § 2611(11); § 2612(a)(D); § 2612(b)(1) and (12); 29 C.F.R. § 825.122(a)(4); §825.115(e)(2).

31. A licensed physician certified that ALTON's Stage IV metastatic breast cancer was a "serious health condition" within the meaning of the FMLA. 29 U.S.C. § 2611(11); 29 C.F.R.§ 825.113.

32. ALTON gave appropriate notice of her FMLA-qualifying reason for leave -- her serious health condition – by requesting FMLA leave via email, by delivering a completed SMITHGROUPJJR Request for Leave form, and by verbally advising the Human Resource Director of her need for FMLA leave. 29 U.S.C. § 2612(e)(2); 29 C.F.R. § 825.302.

33. SMITHGROUPJJR violated the FMLA because it failed to advise ALTON of her eligibility to take FMLA leave within five business days of ALTON's request for leave or when SMITHGROUPJJR acquired knowledge that ALTON's leave may be for a FMLA-qualifying reason. 29 C.F.R. § 825.300(b).

34. SMITHGROUPJJR violated the FMLA because it failed to designate leave as FMLA-qualifying and failed to give notice of the designation to ALTON within five business days after SMITHGROUPJJR acquired knowledge that ALTON's leave may be for a FMLA-qualifying reason. 29 C.F.R. § 825.300(d); § 825.301(a).

35. SMITHGROUPJJR violated the FMLA because it improperly failed to grant ALTON's request for the FMLA leave that she was entitled to under the FMLA. 29 U.S.C. § 2615; 29 C.F.R. § 825.220.

36. SMITHGROUPJJR violated the FMLA because it improperly terminated ALTON's employment with SMITHGROUPJJR because she requested leave that she was entitled to under the FMLA. 29 U.S.C. § 2615; 29 C.F.R. § 825.220.

37. Due to SMITHGROUPJJR's improper failure to grant ALTON's request for FMLA leave, its improper termination of ALTON's employment, and its other violations of the FMLA, ALTON suffered mental anguish, emotional distress, humiliation, emotional pain and suffering, inconvenience, lost wages and benefits, damage to her reputation, and other consequential damages.

38. The actions of SMITHGROUPJJR were intentional, willful, malicious and showed deliberate indifference to ALTON's rights under the FMLA.

39. Pursuant to SMITHGROUPJJR's Health & Welfare Benefit Plan, ALTON would remain a participant in the Plan, and would have been entitled to receive the health program benefits and all other Plan benefits, including short-term and long-term disability, while on FMLA leave.

40. Pursuant to SMITHGROUPJJR's Health & Welfare Benefit Plan, ALTON's participation in the Plan ended upon the termination of her employment.

41. Pursuant to SMITHGROUPJJR's Health & Welfare Benefit Plan, some of benefit programs, including short-term disability and the PPO health plan that ALTON participated in, were self-funded by SMITHGROUPJJR. SMITHGROUPJJR pays for the self-funded benefit programs, including short-term disability and the PPO health plan that ALTON participated in, from its general assets.

42. Because ALTON would have been able to continue to participate in the PPO health plan and short-term disability, both self-funded benefit programs, while on FMLA, SMITHGROUPJJR improperly refused to grant her FMLA leave, and improperly terminated ALTON's employment.

WHEREFORE, the Plaintiff, JULIE ALTON, demands judgment against the Defendant, SMITHGROUP JOHNSON, JOHNSON & ROY, INC., for all relief necessary to make the Plaintiff whole, including but not limited to the following:

(a) any wages, salary, employment benefits, or other compensation denied or lost to Plaintiff by reason of the violation;

(b) interest calculated at the prevailing rate;

(c) equitable relief such as employment, reinstatement or promotion;

(d) litigation costs, expert witness fees, and reasonable attorneys' fees; and

(e) liquidated damages in the amount of actual damages plus interest.

## COUNT II
## DISCRIMINATION/RETALIATION FOR EXERCISING FMLA RIGHTS

43. The Plaintiff realleges and incorporates paragraphs 1 through 23 as if fully set forth herein.

44. The FMLA guarantees eligible employees 12 weeks of leave in a 1-year period following certain events, including the employee's own serious illness. 29 U.S.C. § 2612(a)(1).

45. 29 C.F.R. § 825.220(c) provides that "[t]he Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."

46. SMITHGROUPJJR is a covered employer under the FMLA because it is engaged in commerce or in an industry affecting commerce and employs 50 or more employees for each working day during each of 20 or more calendar workweeks in 2018 or the preceding calendar year. 29 U.S.C. § 2611(4)(A)(i); 29 C.F.R. § 825.104(a).

47. ALTON was an employee of SMITHGROUPJJR that was eligible for FMLA leave because she was employed by SMITHGROUPJJR for at least 12 months and worked at least 1,250 hours during the 12-month period prior to her request for FMLA leave. 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a).

48. ALTON was eligible for FMLA Leave because she worked at least 1250 hours in a year at SMITHGROUPJJR's worksite -- 35 East Wacker Drive, Suite 900, Chicago, Illinois -- with at least 50 people in a 75-mile radius. 29 U.S.C. 2611(2)(B)(ii); 29 C.F.R. § 825.110(a).

49. ALTON was entitled to FMLA Leave because of her serious health condition -- Stage IV metastatic breast cancer -- and that her health condition required treatments, consisting of chemotherapy, making it medically necessary for her to intermittently take leave or require

10

her to work on a reduced schedule. 29 U.S.C. § 2611(11); § 2612(a)(D); § 2612(b)(1) and (12); 29 C.F.R. § 825.122(a)(4); §825.115(e)(2).

50. A licensed physician certified that ALTON's Stage IV metastatic breast cancer was a "serious health condition" within the meaning of the FMLA. 29 U.S.C. § 2611(11); 29 C.F.R.§ 825.113.

51. ALTON gave appropriate notice of her FMLA-qualifying reason for leave -- her serious health condition – by requesting FMLA leave via email, by delivering a completed SMITHGROUPJJR Request for Leave form, and by verbally advising the Human Resource Director of her need for FMLA leave. 29 U.S.C. § 2612(e)(2); 29 C.F.R. § 825.302.

52. Within days of requesting FMLA leave, meeting with the Human Resource Director regarding her request for FMLA leave and providing a completed written request form and medical provider certification regarding her FMLA leave request, SMITHGROUPJJR terminated ALTON's employment for no legitimate reason. 29 C.F.R. § 825.220(c).

53. SMITHGROUPJJR violated the FMLA because it improperly terminated ALTON's employment with SMITHGROUPJJR because she requested leave that she was entitled to under the FMLA. 29 C.F.R. § 825.220(c).

54. In retaliation for ALTON requesting FMLA leave that she was entitled to under the FMLA, SMITHGROUPJJR terminated her employment. 29 C.F.R. § 825.220(c).

55. SMITHGROUPJJR did not have a legitimate reason for terminating ALTON's employment and but for ALTON's request for FMLA leave that she was entitled to under the FMLA, SMITHGROUPJJR would not have terminated ALTON's employment. 29 C.F.R. § 825.220(c).

56. Due to SMITHGROUPJJR's improper termination of ALTON's employment, ALTON suffered mental anguish, emotional distress, humiliation, emotional pain and suffering, inconvenience, lost wages and benefits, damage to her reputation, and other consequential damages.

57. The actions of SMITHGROUPJJR were intentional, willful, malicious and showed deliberate indifference to ALTON's rights under the FMLA.

58. Pursuant to SMITHGROUPJJR's Health & Welfare Benefit Plan, ALTON would remain a participant in the Plan, and would have been entitled to receive the health program benefits and all other Plan benefits, including short-term and long-term disability, while on FMLA leave.

59. Pursuant to SMITHGROUPJJR's Health & Welfare Benefit Plan, ALTON's participation in the Plan ended upon the termination of her employment.

60. Pursuant to SMITHGROUPJJR's Health & Welfare Benefit Plan, some of benefit programs, including short-term disability and the PPO health plan that ALTON participated in, were self-funded by SMITHGROUPJJR. SMITHGROUPJJR pays for the self-funded benefit programs, including short-term disability and the PPO health plan that ALTON participated in, from its general assets.

61. Because ALTON would have been able to continue to participate in the PPO health plan and short-term disability, both self-funded benefit programs, while on FMLA, SMITHGROUPJJR improperly refused to grant her FMLA leave, and improperly terminated ALTON's employment.

WHEREFORE, the Plaintiff, JULIE ALTON, demands judgment against the Defendant, SMITHGROUP JOHNSON, JOHNSON & ROY, INC., for all relief necessary to make the Plaintiff whole, including but not limited to the following:

(a) any wages, salary, employment benefits, or other compensation denied or lost to Plaintiff by reason of the violation;

(b) interest calculated at the prevailing rate;

(c) equitable relief such as employment, reinstatement or promotion;

(d) litigation costs, expert witness fees, and reasonable attorneys' fees; and

(e) Liquidated damages in the amount of actual damages plus interest.

THE PLAINTIFF DEMANDS TRIAL BY JURY.

                                           Respectfully submitted,
                                           PLAINTIFF,

                                           s/    Brian R. Holman
                                           _____
                                           HOLMAN & STEFANOWICZ, LLC
                                           By:    Brian R. Holman

Brian R. Holman (6211123)
Dennis H. Stefanowicz, Jr. (6210166)
HOLMAN & STEFANOWICZ
Attorneys for the PLAINTIFF
233 South Wacker Drive, Suite 9305
Chicago, Illinois 60606
(312) 258-9700
BRH@HS-ATTORNEYS.COM
DHS@HS-ATTORNEYS.COM