UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LESLIE ANNE ALTON, as personal representative of Julie Alton, deceased, | ) ) ) |
| Plaintiff, | ) Case No. 18-cv-4229 ) |
| v. | ) Judge Sharon Johnson Coleman ) ) |
| SMITHGROUP, INC., | ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Julie Alton, now deceased,[1] filed this lawsuit alleging violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, against her former employee SmithGroup, Inc. SmithGroup filed the present motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the reasons explained below, the Court denies SmithGroup's motion in its entirety. [25].

**Background**

The following facts are undisputed unless otherwise noted. SmithGroup is a nationally-recognized design firm. Alton began working the SmithGroup's Chicago Office as an Interior Designer III in February 2017.

On May 18, 2018, Alton sent an email to Alina Rudman, the Human Resources Manager in Chicago, requesting intermittent FMLA leave. In that email, Alton also told Rudman that she had questions concerning short-term and long-term disability insurance, which were part of the benefits provided by the SmithGroup Health & Welfare Benefit Plan. That same day, Rudman responded

---

[1] During the pendency of this lawsuit, Julie Alton died, after which the Court granted her personal representative's motion to substitute as plaintiff. For the sake of clarity, the Court will refer to plaintiff as Alton.

via email explaining that there was a formal process for FMLA leave and provided Alton with two forms that Alton and her physician would need to complete: (1) SmithGroup's Request for Leave and (2) Certification of Health Care Provider for Employee's Serious Health Condition. Three days later, on May 22, Alton sent Rudman the completed SmithGroup leave form indicating that she had a medical need for intermittent FMLA leave. Alton's medical provider sent Rudman the completed Certification of Health Care Provider form on May 29. Alton had stage IV metastatic breast cancer.

Alton and Rudman met on May 22 to discuss her FMLA request. Rudman testified at her deposition that on that date, it was her understanding that Alton's cancer was a serious health condition under the FMLA making Alton eligible for FMLA leave. Also at the May 22 meeting, Alton asked Rudman for information regarding long-term and short-term disability benefits. That same day, Rudman emailed Ed Dodge, Vice President and Director of Human Resources at SmithGroup, explaining that Alton had a serious health condition, cancer, and that she was applying for FMLA leave because she was starting a new drug protocol. Rudman's email to Dodge also explained that Alton had questions about short-term and long-term disability insurance.

SmithGroup terminated Alton's employment on June 1, 2018. SmithGroup explains that its leadership made a business decision in April 2018 to implement a reduction-in-force ("RIF") and that it terminated Alton based on her limited skillset, that Alton had not expanded her skillset, and that the workload that SmithGroup had coming in did not align with her skillset. Alton counters that the Chicago Office Director who approves all terminations, Tim Tracey, testified at his deposition that he did not terminate Alton because of her performance. Alton further counters that the 2018 first quarter forecast, upon which SmithGroup's Chicago leadership relied in making its RIF determination, indicated that there was 5% understaffing and that 3.5 people should be added to the staff. Caroline Lopez, SmithGroup's Director of Operations, testified that she could not

2

recall a situation in which the forecast indicated that there was a need for additional staff, yet the leadership decided that a RIF was necessary.

SmithGroup also sets forth facts that it decided to terminated Alton's employment in April 2018 before Alton requested FMLA leave. Evidence in the record, however, contradicts this assertion, including evidence that SmithGroup's own forecast identified several individuals as possibilities for the RIF, and, that at some point, SmithGroup narrowed the list to two employees, including Alton.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Palmer v. Franz*, 928 F.3d 560, 563 (7th Cir. 2019). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

**Discussion**

The FMLA entitles eligible employees to up to twelve weeks of unpaid leave in a year. *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017). The Act prohibits employers from interfering with and retaliating against an employee's use or attempted use of FMLA leave. *Guzman v. Brown Cty.*, 884 F.3d 633, 638 (7th Cir. 2018). "The difference between the two theories is that a retaliation claim requires the employee to prove discriminatory or retaliatory intent while an interference claim

3

only requires the employee to prove that the employer denied him entitlements provided by the Act." *Pagel v. TIN Inc.*, 695 F.3d 622, 626 (7th Cir. 2012). Alton alleges both theories of FMLA liability.

*FMLA Interference Claim*

"To establish FMLA interference, an employee must prove that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied FMLA benefits to which she was entitled." *Riley v. City of Kokomo,* 909 F.3d 182, 188 (7th Cir. 2018). SmithGroup concedes that Alton has satisfied the first four elements of her FMLA interference claim. The Court thus focuses on the last element—whether a reasonable jury could conclude that Alton's exercise of her right to take FMLA leave was a motivating factor in SmithGroup terminating her employment. *Shaffer v. American Med. Ass'n*, 662 F.3d 439, 444 (7th Cir. 2011); *see also Simpson v. Office of Chief Judge of Circuit Court of Will Cty.,* 559 F.3d 706, 712 (7th Cir. 2009) ("Firing an employee to prevent her from exercising her" FMLA rights "can certainly interfere with that employee's FMLA rights.").

Here, SmithGroup asserts that its leadership made a business decision to implement an RIF and that based on Alton's limited skillset, her failure to expand her skillset, and the lack of available billable work for her skillset, it decided to terminate Alton's employment. In essence, SmithGroup contends that it would have terminated Alton's employment under the RIF regardless of whether she had requested FMLA leave. *Ogborn v. United Food & Commercial Workers Union, Local No. 881,* 305 F.3d 763, 768 (7th Cir. 2002) ("employers may fire employees for poor performance if they would have fired them for their performance regardless of their having taken [FMLA] leave.").

Alton, however, has presented Officer Director Tracey's deposition testimony creating a genuine dispute as to the material fact that her performance was not a factor in her termination. She

4

has also set forth undisputed evidence that an individual whom SmithGroup terminates in connection with a RIF is considered rehireable, thus creating a reasonable inference that her performance was not at issue.

Further, Alton has presented sufficient evidence creating an issue of material fact that the RIF was not necessary, including: (1) the 2018 RIF was the first RIF in the SmithGroup Chicago Office in ten years; (2) out of the approximately 103 employees in the Chicago office, SmithGroup only fired two employees; and (3) the 2018 first quarter forecast, upon which SmithGroup leadership relied in making its RIF determinations, indicated that there was 5% understaffing and that 3.5 people should be added to the staff. It is also undisputed that Tracey, Dodge, and Lopez, who were involved in the decision to terminate Alton's employment, met after she filed her FMLA leave request, and at least Dodge, if not others, was aware that Alton had cancer and was requesting FMLA leave for her new drug protocol.

Viewing the facts and all reasonable inferences in Alton's favor, she has presented sufficient evidence raising a triable issue of fact that SmithGroup's proffered reason for Alton's termination, her performance in the context of the RIF, was false, and thus not a motivating factor in her termination as SmithGroup asserts. The Court therefore denies this aspect of SmithGroup's summary judgment motion.

*FMLA Retaliation Claim*

Next, Alton argues that SmithGroup retaliated against her for requesting FMLA leave. To show a FMLA retaliation claim, a plaintiff must eventually prove: (1) she engaged in a statutorily protected activity; (2) her employer took an adverse action against her; and (3) the protected activity caused the adverse action. *Freelain v. Village of Oak Park,* 888 F.3d 895, 901 (7th Cir. 2018); *see also Guzman*, 884 F.3d at 640 ("To prevail on a FMLA retaliation claim, a plaintiff must present evidence

5

that she was subject to an adverse employment action that occurred because she requested or took FMLA leave.").

SmithGroup does not dispute that Alton engaged in statutorily protected activity by requesting intermittent FMLA leave or that Alton's termination constitutes an adverse action. Rather, SmithGroup argues that Alton is unable to establish a causal connection between her request for FMLA leave and her termination. Alton, in turn, submits that she can establish the causal connection through circumstantial evidence, which includes "suspicious timing, ambiguous statements from which a retaliatory intent can be drawn, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." *Pagel*, 695 F.3d at 631.

As discussed, Alton has presented evidence creating a triable issue of fact that SmithGroup's reason for her termination—her performance and the RIF—was pretextual. She has also set forth evidence that she was the only one of the five individuals SmithGroup originally identified for possible termination in relation to the RIF, who had requested FMLA leave, and she was one of the two employees SmithGroup eventually terminated. In addition, there is suspicious timing, namely, that Alton requested FMLA leave on May 22 and SmithGroup terminated her employment ten days later on June 1. *See Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 564 (7th Cir. 2016) (suspicious timing supports an inference of retaliation "[w]hen an adverse employment action follows on the close heels of protected expression and the plaintiff can show the person who decided to impose the adverse action knew of the protected conduct.").

Construing this circumstantial evidence and all reasonable inferences in Alton's favor, she has established triable issues of fact as to the causal connection element of her retaliation claim. *See Baines v. Walgreen Co.*, 863 F.3d 656, 661–62 (7th Cir. 2017) ("If [a] plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more

likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate.") (citation omitted).  The Court therefore denies SmithGroup's summary judgment motion as to Alton's FMLA retaliation claim.

**Conclusion**

Based on the foregoing, the Court denies defendant's summary judgment motion [25].

IT IS SO ORDERED.

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge

DATED: 10/3/2019